# Fort's Adm'r *v.* Davis.

*Bill in Equity by Purchaser, against Heirs and Administrator of Deceased Vendor, for Specific Performance.*

1. *Proof of transactions with deceased person, whose estate is interested in suit; competency of parties as witnesses.*—Under a bill for specific performance, filed by the purchaser against the heirs and personal representative of the deceased vendor, alleging that the notes for the purchase-money were given by the vendor to a son and daughter who had not received equal advancements with his other children, and were paid to them by the complainant after the death of the vendor ; such payments are not *transactions with the decedent* whose estate is interested in the result of the suit (Code, § 3058), and may be proved by the distributees to whom the money was paid, although they are parties to the suit ; but a party to the suit, being an heir and distributee, can not testify to statements by the deceased vendor tending to disprove the alleged gift and transfer of the notes, thereby increasing the assets of the estate in which he is interested.

2. *Revision of Chancellor's decree on facts.* – "Giving the legal testimony in this record its proper weight, and treating the chancellor's finding as *prima facie* correct, the court can not clearly see that his judgment is wrong ;" and therefore affirms his decree, under the rule laid down in *Rather v. Young* (54 Ala. 94), and other cases cited.

APPEAL from the Chancery Court of Macon.

Heard before the Hon. R. F. LIGON, as special Chancellor, selected by the parties on account of the disqualification of the Hon. N. S. GRAHAM.

The bill in this case was filed on the 2d September, 1878, by R. Tatum Davis, against the heirs, distributees and personal representative of the estate of Joseph J. Fort, deceased ; and sought the specific performance of a contract for the purchase of a tract of land by the complainant from said Fort in his life-time, an injunction of an action at law brought by the administrator to recover the land, and a

divestiture of the legal title out of the heirs.  By the terms of the contract between the complainant and said Fort, as shown by the bond for titles, which was dated the 4th November, 1869, and made an exhibit to the bill, the agreed price of the land was $4,000, which was to be paid in installments of $1,000 each, on the 1st January, 1871, 1872, 1873, and 1874, respectively ; and the bond was conditioned for the conveyance of title on full payment of the several notes given for the purchase-money.   The bill alleged that two of these notes were fully paid off and discharged at maturity, and a partial payment was made on the third ; that the vendor, being old and in infirm health, afterwards divided and distributed all his property among his children, and, having given more to the other children than to his daughter Mary, who was the wife of the complainant, he gave her the complainant's two unpaid notes, on which the balance due was about $1,200, and delivered them to her, "upon the further consideration that she would care for and minister to his wants and comfort for his life ;" that William Fort, a son of said Joseph J., who had been absent from home, residing in South Carolina, returned soon afterwards, and, "recognizing the fact that he also had not received an equal advancement with the other children, said Joseph J. requested his said daughter Mary to divide with said William the amount due on said unpaid notes ; which she agreed to do, upon his promise and agreement to aid and assist in the care and support of their said father."   As to the performance of this promise by Mrs. Davis to take care of her father, and as to the payment of the balance due on the notes, the bill contained the following allegations :   "Your orator alleges that said Joseph J. Fort was aged and infirm, and required a great deal of care and attention for some time previous to his death, to-wit, for more than two years, but the care and attention of said Mary extended through a period of six years or more ; that the said Mary did fulfill, in every respect, the contract made with her father, as an affectionate and loving daughter ; and that your orator, in pursuance of said last-mentioned agreement, and the request of said Joseph J. Fort, paid to the said William Fort, after the death of the said Joseph J., one-half of the amount due on said notes, when they were given up to him by said William, to whom they had been handed, at his request, by the said Mary, when they made the agreement in reference to the care and attention to be bestowed by each on their father ; and your orator has paid to his said wife the other half of said notes."   Possession of the land seems to have been delivered to the complainant, under his contract of purchase, though the fact is not alleged in the bill ; nor

does the bill allege when said Joseph J. Fort died, though it alleges that letters of administration on his estate were granted in July, 1878.

Mrs. Davis, the complainant's wife, was made a defendant to the bill; and she answered, admitting its allegations. William W. Fort was also made a defendant, and a decree *pro confesso* was entered against him. The administrator of Joseph J. Fort answered, denying the material allegations of the bill, as did also several of the adult defendants who were distributees of the estate; and a formal answer was filed by the guardian *ad litem* of the infant defendants, denying the allegations of the bill, and requiring proof. Mrs. Davis and William Fort, whose depositions were taken on behalf of the complainant, testified to the gift and transfer of the notes, substantially as alleged in the bill. The other distributees filed objections to the interrogatories propounded to said William Fort, " calling for any statements by, or transactions with said Joseph J. Fort, deceased," as being within the prohibition of the statute relating to the proof of transactions with a deceased person, or declarations by him, when his estate is interested in the result of the suit (Code, § 3058); and they filed similar objections to the interrogatories propounded to Mrs. Davis, the complainant's wife. The deposition of Camillus Fort, one of the distributees and defendants, was taken on behalf of the defendants; and he testified, principally, as to the advancements made by the decedent to his several children. In answer to one of the interrogatories in chief, this witness farther testified: "In the spring of 1872, I had a conversation with said Joseph J. Fort, about the notes alluded to. He was then at my house, and asked me where his notes against R. T. Davis and his papers were. I told him that W. W. Fort had them. He then asked me, how Billy Fort got them; and I told him, that said Billy Fort got them the last time he was down there. He then told me, that he wanted me to go and get them, and bring them over to my house. That was all that was then said about said notes. R. T. Davis was not present at the time." The complainant objected to the competency of this witness, "because he is a son of said Joseph J. Fort, deceased, whose estate is interested in the result of this suit," but no special objections were filed to any particular interrogatories.

The complainant took the deposition of Virgil A. S. Mounce, the material portions of which are embraced in the following answers: "I was not present when the contract [between the complainant and Joseph J. Fort] was made. I was at the house of said Fort in the fall of 1869, when he remarked, in the presence of complainant, that he had sold the

[Fort's Adm'r v. Davis.]

lands mentioned to complainant. He said that the notes given for the land were on long time, and without interest ; and that all he expected out of said notes was a living. I heard him say, also, that he himself could not divide his property with William W. Fort, because it had passed out of his hands, he reserving a living out of it ; that what he had belonged to Mrs. Mary Davis. These notes, given by Davis for purchase of certain lands, *was* at that time a part of his property. Fort repeated the remark, as to the gift to Mrs. Davis, on several occasions. He told me that he got $1,000 from said R. T. Davis, to pay for a house and lot in Tuskegee which he had bought; that he had never intended to collect this money from Davis, but was compelled to call on him for it ; that all he had reserved to himself, out of the notes, was a living ; and I heard him say, also, that Mrs. Davis was to divide the residue of the notes with William W. Fort, after deducting the expenses of his living, &c. He told me repeatedly that he had given Mrs. Davis all he had except a living, and that he wished me to remember it, as there might be trouble." Dr. W. F. Hodnett, whose deposition was taken by the complainant, testified : " In various conversations had with said Joseph J. Fort, from 1865 to 1872, when he died, I heard him repeatedly say that, after giving off and selling his other property, what he had left he intended for his own support during life, and after his death for Mrs. Mary Davis, for taking care of him. The terms were, that Mrs. Davis was to live with him, and take care of him the balance of his life, he being quite old and infirm, and requiring a great deal of attention most of the time ; and these terms were faithfully complied with by Mrs. Davis, up to the time of his death."

The cause being submitted for final decree on the pleadings and proof, and on the various objections to evidence, the special chancellor sustained the objections to the testimony of Mrs. Mary Davis, W. W. Fort, and Camillus Fort, " which refers to statements by the deceased, or transactions with him ;" but held the complainant entitled to relief on the entire case made by the pleadings and proof, and rendered a decree as prayed by the bill. The appeal is sued out by the administrator and heirs, who here assign as error, that the special chancellor erred in the final decree rendered, " and in holding that the complainant's wife was a competent witness for him."

W. C. BREWER, and J. A. BILBRO, for appellants.

[Fort's Adm'r v. Davis.]

ABERCROMBIE & GRAHAM, S. B. PAINE, and W. C. MCIVER, *contra*.

STONE, J.—The testimony is very full, and unquestionably competent, which proves that after the death of Fort, the vendor, Davis, the purchaser, paid to Mrs. Davis and her brother, W. W. Fort, the balance of the purchase-money due on the land. Such payment was in no sense a transaction with the decedent; and under the severest construction we could give to § 3058 of the Code of 1876, both Mrs. Davis and her brother were competent witnesses to prove such payment. The only question, then, on which any contest can arise, is, whether or not the right and ownership of the notes was transferred to his said daughter and son. The testimony of Camillus Fort, claimed to have a bearing on this question, was clearly illegal. Its tendency was to prove that the estate of the older Fort was still entitled to the notes, and thus to create, or increase a fund, in which he would share as a distributee. He is a party to the suit; his testimony related to a statement by the intestate, whose estate was interested in the result of the suit; and if the administrator succeeded in making his defense good, his, the witness' share, would be increased. The question falls directly within § 3058 of the Code.

The special chancellor ruled out all the testimony, offered on either side, of the children of the elder Fort, detailing transactions with, and statements by, intestate. They are all parties to this suit, and he ruled that they fell within the exception expressed in § 3058 of the Code. He granted relief to complainant, however, on the other testimony in the cause. Giving the testimony in this record its proper weight, and treating the Chancellor's finding as *prima facie* correct, we can not see clearly that his judgment is wrong.—*Rather v. Young,* 56 Ala. 94; *Lamar v. Brown, Ib.* 157; *Collins v. Loyal, Ib.* 403.

We do not think there is any substantial variance between the allegations and proof.—*Bogan v. Daughdrill,* 51 Ala. 312.

Affirmed.